IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THE EQUAL RIGHTS CENTER | * | |
| | * | |
| | * | |
| v. | * | Civil No. – JFM-10-3038 |
| | * | |
| RICHMAN PROPERTY SERVICES, INC. | * | |
| | ****** | |

**MEMORANDUM**

The Equal Rights Center ("ERC") has brought this action against Richman Property Services, Inc., and several other defendants for a violation of the Fair Housing Act. Discovery has been completed, and defendants have moved for summary judgment. The motion will be granted.

As an initial matter, I have a question about the ERC's standing to bring this action. It bases its claim for injury and damages upon all of the work which it did in the Frederick, Maryland, region in its efforts to combat discrimination in housing against Hispanics. It has not "disaggregated" injury and damages it allegedly suffered as the result of defendant's actions at the Field Pointe Apartments that are the subject of this action. However, because I deem it to be prudential to decide this case on the narrowest of possible grounds, I will assume that ERC does have standing to bring this action. For the same prudential reasons, I do not address such issues as the appropriateness of the test designed by ERC, the alleged inability of Mary Baird and Rachel Ramsey to determine a housing applicant's ethnicity, or the alleged inadmissibility of the expert opinions expressed by Calvin Bradford, one of ERC's expert witnesses.

In the final analysis, this case turns upon whether there is any basis for inferring discrimination from the tests that ERC conducted at the Field Pointe Apartments. There are

certainly disputes of fact, as may be expected when the construction of events depends upon the testimony of those who were present during the tests. I have concluded, however, that there are no disputes of material fact and that viewing the evidence most favorably to ERC, defendants are entitled to the summary judgment they seek.

The first test was conducted on April 9, 2009. Both the Latino tester and the White tester interacted with Ms. Baird, Field Pointe's assistant manager. Both of them requested a one-bedroom apartment. Ms. Baird showed each of them a one-bedroom apartment. She also told the White tester about another available one-bedroom unit and showed him the location of that unit on a map.[1] Ms. Baird did so, however, after the tester had advised her that he would not be able to move in April and asked that if any one-bedrooms were "coming up in early to mid-May." That is the major discrepancy in the treatment upon which ERC relies upon in contending that Ms. Baird discriminated against the Latino tester.

Other pieces of evidence upon which ERC relies are not material. Ms. Baird allegedly told the White tester but not the Latino tester about a possible six-month lease but neither tester requested a lease for six months. Ms. Baird also allegedly told the Latino tester that a security deposit would range from $250 to two months rent but did not give the Latino tester the option of a bond. While that may be somewhat suspicious on its face, ERC does not dispute that Ms. Baird did not mention the lower $250 deposit to the White tester. Moreover, as defendants argue, in violation of ERC's own rules, the Latino tester destroyed his notes of the interview and submitted his narrative beyond the 48-hour limit set by ERC, and his recollection is therefore itself suspect. Finally, any discussion that Ms. Baird had with the White tester about "free rent" is fully explained by the fact that she first mentioned "free rent" to the White tester before she

---

[1] In its third amended complaint, ERC mistakenly alleges that Ms. Baird showed the White tester the second one-bedroom unit.

realized he was in a current lease as to the April rent and that she did not mention "free rent" in May to the White tester.[2]

The second test occurred many months later, on August 22, 2009. Again, each tester was shown a one-bedroom apartment, and again both testers interacted with Ms. Baird. Each tester requested a one-bedroom and was shown a one-bedroom apartment. According to ERC, only the White tester was offered a six-month lease but neither tester requested a six-month lease. In any event, it is undisputed that ultimately the one-bedroom apartment was leased to a Hispanic. Moreover, Ms. Baird was unquestionably courteous to the Latino tester. She also quoted the "good credit" $175 bond and told her it would be applied to rent, whereas she told the White tester that the bond would range from $175 to $350 depending on credit. Ms. Baird allegedly told the White tester that there was no "riff raff" at the Field Pointe Apartments but the term "riff raff" is without ethnic meaning.

The third test occurred on November 6, 2009. The Latino tester interacted with Ms. Ramsey; the White tester interacted with Ms. Baird. There was no one-bedroom apartment available on November 6th. Varying from his script, the Latino tester said that he might be interested in a two-bedroom apartment, and he was shown such an apartment by Ms. Ramsey. The White tester also varied from his script, saying that his lease was not up until the end of November. Because a one-bedroom apartment would become available on December 1, Ms. Baird mentioned that apartment to him. She allegedly told him that the November rent would be

---

[2] Defendants also point to various facts that indicate that Ms. Baird acted more favorably to the Latino tester, including (1) she described fewer amenities at the complex to White tester, (2) that she told him that he would have to pay any damages out of his own pocket, and (3) that she did not give him her business card. Further, ERC does not deny that the Latino tester praised Ms. Baird and said she was "very polite" to him. Although, of course, as ERC argues, it certainly can be "[d]iscrimination with a smile," the fact that Ms. Baird treated the Latino tester with courtesy and respect is a factor that cannot be lightly disregarded.

3

free but this makes no sense because he had previously said that his present lease was not up until the end of November.  According to ERC, Ms. Ramsey told the Latino tester that the application fee was $35, and Ms. Baird told the White tester that the application fee was $30.  This discrepancy may have been due to the fact that the Latino tester took no notes and did not immediately write his narrative of the event.  In any event, no reasonable inference of discrimination can be drawn from the fact that a $5 difference in application fee was mentioned.  ERC also ignores the facts that the White tester was not given an application, was told that a bond would be required and that the bond would be higher if he had bad credit.

On these facts, whether the tests are considered individually or together, there is insufficient evidence that defendants discriminated against Hispanics to permit the case to be submitted to a jury.  However laudable ERC's mission may be, it is not entitled to have a case submitted to the jury on the mere suspicion of discrimination.  Therefore, summary judgment will be entered in favor of defendants.


Date:   May 27, 2014              /s/_____
                                  J. Frederick Motz
                                  United States District Judge